**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF VERMONT**

| | | |
|---|---|---|
| MATTHEW CHANEY, NADINE MILLER, AND ARTHUR GUSTAFSON, on behalf of himself and all others similarly situated, | ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 2:21-cv-120-wks |
| v. | ) | |
| | ) | |
| VERMONT BREAD COMPANY, SUPERIOR BAKERY, INC., KOFFEE KUP BAKERY, INC., KOFFEE KUP DISTRIBUTION, LLC, KK BAKERY INVESTMENT COMPANY LLC, KK BAKERY HOLDING ACQUISITION COMPANY, and AMERICAN INDUSTRIAL ACQUISITION CORPORATION, | ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| and | ) | |
| | ) | |
| LINDA JOY SULLIVAN, in her capacity as the Dissolution Receiver for Koffee Kup Bakery, Inc., Vermont Bread Company, Inc. and Superior Bakery, Inc., | ) ) ) ) ) ) ) | |
| | ) | |
| Intervenor-Defendant. | ) | |

**CLASS REPRESENTATIVES' MOTION FOR SANCTIONS REGARDING**
**RULE 30(b)(6) DEPOSITIONS OF AIAC DEFENDANTS**

The Class Representatives respectfully move for sanctions as discussed herein,

against Defendants American Industrial Acquisition Corporation ("AIAC") and KK

Bakery Investment Company LLC ("KKBIC"), together with AIAC, the "AIAC

1

Defendants"), regarding the Rule 30(b)(6) depositions which were noticed on July 25, 2022, and taken on November 10 and 11.

Sanctions are warranted against the AIAC Defendants for replacing the long promised 30(b)(6) representative with a different, unprepared witness on the day of the first 30(b)(6) deposition and lying about the reason for doing so. Sanctions are also warranted against the AIAC Defendants for belatedly dribbling out relevant documentary evidence or, in some instances, simply refusing to produce it at all, as shown below. This is part of a pattern of discovery abuses and obfuscation by the AIAC Defendants.

Class Counsel have conferred in good faith with counsel for AIAC Defendants in order to avoid this motion, but no resolution was reached. See, Exhibit 1, Declaration of Mary E. Olsen ("Olsen Dec."), attached hereto.

As the Court may recall from prior matters in this case, AIAC is (by its own self-description) an "acquirer of troubled companies" headed by Leonard Levie. AIAC and its newly formed entity, KK Bakery Investment Company LLC ("KKBIC") are both sued in this WARN Act case under a "single employer" theory. Class Representatives and the Receiver submit that AIAC directed the termination of the Class members here, through AIAC's domination and control over KKBIC; Kup Co., Inc. ("Kup Co."), the immediate parent of the Koffee Kup Entities, and the Koffee Kup Entities themselves.

When the Class Representatives noticed Rule 30(b)(6) depositions of the AIAC Defendants many months ago, there ensued a long series of conversations between the parties in which AIAC Defendants insisted that Mr. Levie (who was, according to AIAC Defendants, the only appropriate 30(b)(6) representative) had only two dates available for

the entire second half of this calendar year: November 10 and 11. So ultimately, those dates were agreed upon.

Not to spoil the story – but when those dates came, Mr. Levie was not the 30(b)(6) designee. Instead the AIAC Defendants put forth a different designee, Jeffrey Sands, who was inadequate as explained below.

In the week before the 30(b)(6) depositions, that had been noticed for over three months, the AIAC Defendants filed emergency motions on November 2, 2022, seeking (1) to stay the Class Representatives' 30(b)(6) depositions of AIAC and KKBIC ["Motion to Stay" ECF No. 149] and (2) to limit the scope of the same Rule 30(b)(6) depositions of AIAC and KKBIC ["Motion for Protective Order", ECF No. 148]. Among the filings were communications between the parties concerning the upcoming 30(b)(6) depositions wherein AIAC Defendants repeatedly referred, in writing, to Mr. Levie as the AIAC and KKBIC designee for the 30(b)(6) depositions, as they had in phone conversations many times before. [See, ECF No. 148-9, p. 4-6 "While KKBIC and AIAC will make a conscientious effort to prepare their designee, Leonard Levie, he cannot reasonably be expected to testify about all the discovery that has occurred in this case or all of the details surrounding both the April 1, 2021 stock purchase agreement and the closure of the Koffee Kup entities. To ensure that KKBIC and AIAC can reasonably prepare for their 30(b)(6) depositions, they request that the following depositions topics be narrowed and described with more particularity. . . It does not matter that AIAC's 30(b)(6) designee, Leonard Levie, also serves as an officer or director for other corporate entities because courts "presume that directors and officers holding positions" with multiple corporations 'can and do

3

'change hats' to represent the two corporations separately.' . . Because Mr. Levie, as the 30(b)(6) designee for AIAC, will be testifying in his capacity as Chairman for AIAC—and not in his capacity as a Kup Co. board member or managing member of KKBIC—AIAC objects to the following deposition topics, which ask AIAC to provide testimony as to matters not known or reasonably available to AIAC. . .Similarly, as the corporate designee for KKBIC, Leonard Levie can only provide "testimony . . . as to 'matters known or reasonably available" to KKBIC." ; ECF No. 148-10 pp. 2-3 ("Additionally, while I do not dispute that you may question either entity about communications relating to the Koffee Kup entities (or other documents produced in discovery), it is not reasonable to expect Mr. Levie to have an encyclopedic knowledge of all communications or all documents in the record.")]   Ultimately, the Court denied the AIAC Defendants' Motion to Stay the depositions but limited certain of the requests in temporal scope and relevance to the issues in the present case.  [ECF No. 153].

On Monday, November 7, beginning the week in which the long-scheduled depositions would take place, AIAC Defendants threw up another roadblock. AIAC Defendants' counsel stated that she had "learned Friday afternoon that Mr. Levie must appear in a state court action in the mid-west in connection with an affiliate of AIAC, and confirmed that is still the case today." (emphasis supplied). Notably, AIAC Defendants shared nothing about the potential for Mr. Levie's unavailability for the 30(b)(6) depositions with the Court.  Class counsel asked AIAC Defendants for details, including "when the other matter was set and the need for Mr. Levie's in-person court appearance." The intervenor Receiver's counsel did as well. AIAC Defendants declined to provide

details, claiming lack of knowledge. [Olsen Dec., Ex. 1 hereto]. AIAC Defendants

suggested rescheduling – despite AIAC Defendants having earlier claimed that the existing

dates were the only ones that Mr. Levie had available during a span of many months – but

Class Counsel declined to agree, suggesting that AIAC Defendants move for a protective

order if they thought such was warranted. [Olsen Dec., Ex. 1 hereto]. Class Counsel heard

no response and AIAC Defendants made no such motion.

To depart from the chronology for a moment: Later investigation revealed that the

AIAC Defendants were not being honest and apparently, mislead their own counsel into

relaying their fabricated "conflict" to Plaintiffs' and Receiver's counsel.[1] Mr. Levie did not

in fact have to appear in state court, and in fact he did not appear. Furthermore, the state

court hearing had been scheduled for over a month, before being offered up as a deposition

roadblock in this case mere days before the depositions. Counsel for the intervenor

Receiver in this case was able to secure a copy of the docket from the state court proceeding

where Mr. Levie allegedly had to appear and was able to speak with counsel involved in

that matter. Receiver's counsel learned that the hearing that Mr. Levie claimed, through

counsel, he had to attend was actually noticed on September 30, 2022—well over a month

before any hint of a "conflict" was raised with respect to the 30(b)(6) deposition in this

matter.  The Receiver's counsel further learned that Mr. Levie did not appear at all on

November 10, not in person or virtually.  The parties had a call on Friday, November 18,

2022, to discuss the discovery disputes following the 30(b)(6) depositions and it was during

---

[1] AIAC Defendants' counsel moved to withdraw from representation of AIAC Defendants on December 15, 2022.
The precise reasons for the requested withdrawal are not disclosed in AIAC Defendants' counsel's motion.

this call that Receiver's counsel told AIAC Defendant's counsel what he had learned about the state court proceeding where Mr. Levie allegedly had to appear.  [Olsen Dec., Ex. 1 hereto].  AIAC Defendant's counsel said this was news to her and that she would look into it.

After being faced with this information, AIAC Defendants, through counsel, finally admitted to Plaintiffs' and Receiver's counsel, on a second call, occurring on November 22, 2022, that Mr. Levie had not appeared for any hearing in the other matter on November 10, 2022—but pivoted to suggesting that Mr. Levie needed to be available to his counsel to talk about the hearing and issues raised therein.  [Olsen Dec., Ex. 1 hereto].  AIAC Defendants further admitted, through counsel, that Mr. Levie had no conflict at all on November 11, 2022, but said again, as stated on the record on November 10, 2022 [see, AIAC Deposition, pp. 246-248], that AIAC Defendants could designate whoever they wanted to appear for the 30(b)(6) depositions and that they did not now intend to put up Mr. Levie. [Olsen Dec., Ex. 1 hereto]. The months-long refrain that Mr. Levie was the only possible 30(b)(6) designee, and that scheduling had to accommodate his extreme claims of unavailability, was no more.

But returning now to the chronology: when the depositions began on November 10, the AIAC Defendants announced that Mr. Levie would not be the 30(b)(6) representative. Instead it would be Jeffrey Sands.

The point of a Rule 30(b)(6) deposition is to get all of the knowledge reasonably available to the corporate entity. It requires a prepared representative, who cannot rely simply on his own personal knowledge or lack thereof, but must be prepared in advance to

say what the corporation knows. If the corporation does not do that, sanctions may follow. This is explained, for instance, in a helpful list of commandments in *QBE Ins. Corp. v. Jorda Enters.*, 277 F.R.D. 676, 687 et seq. (S.D. Fla. 2012). "In other words, a corporation is expected to *create* an appropriate witness or witnesses from information reasonably available to it if necessary." *Id.* at 689 (emphasis in original). "As a corollary to the corporation's duty to designate and prepare a witness, it must perform a reasonable inquiry for information that is reasonably available to it." *Id.* "Preparing a Rule 30(b)(6) designee may be an onerous and burdensome task, but this consequence is merely an obligation that flows from the privilege of using the corporate form to do business."

These obligations are known to the AIAC Defendants. Indeed, the AIAC Defendants emphasized them to this Court in their emergency motion for a stay, the week before these depositions. *See* ECF No. 149 (filed by AIAC and KKBIC), at p. 4 ("KKBIC and AIAC have an affirmative obligation to ensure their designee can give complete answers on behalf of the entity—and face the threat of sanctions if their witness is unprepared. . .").

Mr. Sands was not prepared to answer basic questions about relevant facts underlying the claims. For example,  in questioning about an AIAC affiliate known as Alliance Manufacturing and Trading Company ("AMTC") which AIAC used to fund the Koffee Kup acquisition █████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████

███████████████████████████

Q. (BY MS. OLSEN:) All right. And how is that accomplished? What communications occur for AMTC to fund acquisition prospects for AIAC?
MS. HOECHST: I am going to object on the basis of the Court's order. With that objection, you may answer if you can.
A. Yes. As AIAC's representative, I just don't know that.

[AIAC Deposition p. 73-74]

Q. (BY MS. OLSEN:) And was there a written record of any loan provided by AMTC to fund the AIAC acquisition involving Koffee Kup?

A. I am told there are -- it was documented, but I have not personally seen those documents.

[AIAC Deposition p. 75].

Q. Do you, as a representative of KKBIC, know any of the terms of the loan between KKBIC and AMTC?
A. The amount was a million dollars. The date was around the end of March, beginning of April of '21. But I don't remember other details.[2]
Q. Mr. Sands, as a representative of KKBIC, you are not aware of any maturity date of that particular loan?
A. I don't remember.
Q. And you are not aware of any dates of repayment?
A. I don't remember.

 [KKBIC Deposition pp. 56-57]

Q. In the course of KKBIC dealings with AMTC related to the loan that you have talked about today, did you have any – you have any personal dealings with anyone from AMTC other than the lawyers?
A. Levie and lawyers.
Q. And what did Mr. Levie do or say related to that transaction?
MS. HOECHST: Object to form.
A. And we are talking about the loan from AMTC?

---

[2] Just today, KKBIC's designee Jeffrey Sands submitted an errata sheet for the November 11, 2022 deposition in which he purportedly amends KKBIC's testimony. Sands now claims, despite his repeated testimony on this point to the contrary, that "[t]here was no formal loan between AMTC and KKBIC" for the funds AMTC provided "for the acquisition of the Koffee Kup entities".

Q. (BY MR. RUEGGER:) Yes, sir.
A. I don't know. I really wasn't involved in that.
Q. Well, then I am sorry. I thought you said you had some dealings with him relating to that transaction. I am asking what were the nature of those dealings?
A. I am trying -- I don't think anything in particular. I remember we need to inject money, there's a loan, we will borrow it from here. And it was Levie and Selinger and I overheard stuff, but I wasn't involved, and I don't really have any memory because this was a long time ago. And I am so operationally focused, that just wasn't my thing.

[KKBIC Deposition pp. 235-236]

Mr. Sands was asked about a written communication by Mr. Levie referring to a

million dollars invested in the Koffee Kup entities.  The following exchange then occurred:

Q. (BY MS. OLSEN:) And so as a representative of AIAC, do you acknowledge that the one million dollars that is referenced there in Mr. Levie's email refer to the one million dollars that AIAC caused AMTC to pay for the Koffee Kup transaction?

A. As a representative who was not involved in this, it is hard for me to say. It would be conjecture on my part.

[AIAC Deposition, p. 98].

Similarly, AIAC Defendants' unprepared 30(b)(6) representative could not answer

questions about whether certain professionals, including the attorneys who gave advice

relating to Koffee Kup, had been retained by AIAC or KKBIC and/or who they were paid

by [see, e.g. Sands AIAC pp. 100-109; 119-130; Sands KKBIC pp. 68, 71; 101-103]; could

not answer what Leonard Levie paid for his ownership interest in KKBIC or whether Mr.

Levie served as "chairman" of KKBIC [see, Sands KKBIC p. 88-89]; could not answer

questions about a Dorset Partner's invoice for work performed at Koffee Kup during the

relevant time period (that was mentioned for the first time in the KKBIC 30(b)(6)

deposition on November 11, 2022 and that had not been produced at the time of the

9

30(b)(6) depositions) which purportedly lead to a ██████████████████ [see, e.g., Sands

KKBIC pp. 188-90 "Q: So your testimony today is that you don't know who Dorset

Partners would have submitted an invoice to when the offer to pay had come from AIAC?

MS. HOECHST: Object to form. A: My testimony is I don't remember. And if you have

that handy, why don't you just bring it up and get past the suspense. Q. (BY MS. OLSEN:)

Well, that is the interesting thing. It has never been provided to us. A. Oh."]; could not

explain why documents produced in discovery in this matter that predated KKBIC's

existence were stamped as "KKBIC" [see, e.g., Sands KKBIC p. 223]; testified that he had

contacted a mailing house, via email (which was never produced), concerning the mailing

of the employee WARN letters but claimed he couldn't recall the date [see, Sands KKBIC

p. 226-229]; couldn't recall conversations with Levie about the WARN notices [see, Sands

KKBIC p. 229]; did not know what assets AIAC has other than a bank account with less

than $10,000 in it [see, e.g., Sands AIAC p. 200] and so on.

On November 12, 2022, Plaintiffs again requested the invoice(s) and any related

correspondence with regard to the ██████████████████ mentioned during the

KKBIC 30(b)(6) testimony the day before.  [Olsen Dec., Ex. 1 hereto].  Plaintiffs also

requested all loan agreement(s) and related documents between KKBIC and AMTC. *Id*.

Plaintiffs pointed out that this information was encompassed by Plaintiffs' first and second

sets of discovery requests. Plaintiffs included the specific request numbers and attached the

related prior discovery responses from AIAC Defendants that did not include the

information sought. *Id*.  And, after the unprepared 30(b)(6) representative testified that

there was documentation of the so-called "loan" of a million dollars by AMTC for the

Koffee Kup acquisition, AIAC Defendants have now informed Class Counsel that this was incorrect. After first trying to avoid production of such documentation by claiming that it was somehow attorney/client privileged, AIAC Defendants then claimed on November 22, 2022, that no such documentation had been located.[3]

As for the invoice, belatedly produced on November 22, 2022 after the 30(b)(6) depositions, even though encompassed by Plaintiffs' discovery requests going back to February 2022—it includes numerous daily entries for work performed during the relevant April 2021 time frame.  The work entries described on the invoice include activities related to "closure", "shutdown," "WARN Prep" and "WARN"—all of which were performed by Mr. Sands in exchange for a promise that he would be paid by AIAC or its affiliates, coming from none other than Mr. Levie, himself, as chairman of AIAC. [Olsen Dec., Ex. 1 hereto, and Attachments].  Nothing else was provided with the two pages of invoice—no updates to prior written discovery responses; no cover communications to show who the invoice was sent to.  What was gleaned from the unprepared 30(b)(6) witness's testimony was that the invoice was ultimately paid ███████████████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████.  When Plaintiffs asked for an unredacted copy of the previously produced ███████████████████████████████████—AIAC Defendants did not provide it. Nor has any privilege log been provided.

---

[3] As noted in FN 2, just today, KKBIC's designee Jeffrey Sands submitted an errata sheet for the November 11, 2022 deposition in which he purportedly amends KKBIC's testimony.  Sands now claims, despite his repeated testimony on this point to the contrary, that "[t]here was no formal loan between AMTC and KKBIC" for the funds AMTC provided "for the acquisition of the Koffee Kup entities.

In short, the AIAC Defendants have made a mockery of Rule 30(b)(6) and normal discovery practices, in general. After insisting that no one but Mr. Levie could fill the 30(b)(6) role – and making extreme scheduling demands on his behalf – AIAC Defendants then made misrepresentations of fact about Mr. Levie supposedly having to appear in court on the long-scheduled days. Then, the AIAC Defendants put up a different representative, who was unprepared to testify about relevant facts within the scope of the deposition topics. [See, e.g., Sands AIAC pp. 246-248 MS. OLSEN: Well, I am curious what tomorrow holds, Kendall. We understood Mr. Levie was going to be the witness for both of these depositions, and so it wasn't until Mr. Sands appeared today that we learned that Mr. Levie was not going to be the witness, as we all and the Court had been told. And so for tomorrow's deposition, who can we expect? MS. HOECHST: Well, as I said at the beginning of the deposition, we had to change the designee for AIAC today because Mr. Levie was not available, in another court matter. And I understood you were not willing to reschedule the deposition to next week. So I believe Mr. Sands will be the deponent tomorrow on behalf of KKBIC as well. MS. OLSEN: All right. And just for the record, it is clear that we were not told that Mr. Levie was not going to appear today himself or make arrangements to appear when we said that we were unwilling to move and unable to move the deposition. MS. HOECHST: Just to note for the record, under the rule I believe it is up to the entity to select its designee, and the entity designated Mr. Sands for today's deposition. MS. OLSEN: But as we have seen, there are a number of areas that Mr. Sands was not prepared to testify. And so will you be putting up Mr. Levie for the topics that Mr. Sands was not prepared on? MS. HOECHST: I don't agree that Mr. Sands was not properly

prepared within the scope of the Court's order, but I am happy to take up any particular questions that you feel the entity did not appropriately respond to after the fact. We don't have any present intentions to provide any other witness on behalf of AIAC. As I mentioned, KKBIC intends to designate Mr. Sands as its representative for tomorrow's deposition.")   The unprepared witness's testimony also highlighted that relevant documents existed within the scope of Plaintiffs' written discovery requests that had simply not been produced, as shown herein.

This conduct falls woefully short of anything that undersigned as well as this Court should be able to count on from AIAC Defendants—and there has been a pattern of this conduct by AIAC Defendants in this litigation.

To recap, AIAC and KKBHAC began their delay in this case with a meritless motion to dismiss for lack of personal jurisdiction, claiming they had nothing to do with any operation of the bakeries involved in this suit. [ECF No. 36; see also ECF No. 60 (denying motion without prejudice)]. As discovery later revealed – some of which has been shared with the Court during motion practice [ECF. No. 94 p. 4 and exhibits referenced therein] and here– this could not have been further from the truth. Unsurprisingly, AIAC and KKBHAC did not file a renewed motion to dismiss after the close of the jurisdictional discovery.

Then there was the attempt by AIAC Defendants to delay or avoid the deposition of AIAC's head, Mr. Levie, as recounted in ECF No. 90 and ECF No. 99, leading to the necessity of serving a subpoena, followed by motion practice before this Court, and ultimately a deposition of Mr. Levie in June.  Mr. Levie continued his delaying and

13

obstructionist tactics into his deposition, during which he engaged in long pauses before responding to most questions, asking well over one hundred times for the questions to be repeated, restated or rephrased.  Further, Mr. Levie also stated more than fifty times on the record, that he would have to research the answer to questions and provide the responses later.  When AIAC Defendants finally produced the written "responses" more than three months later, they were unsworn, incomplete and in a number of instances simply did not provide the requested information.  While frustrating, Class Counsel knew that Mr. Levie had been designated as the 30(b)(6) witness by AIAC Defendants and thus would have an opportunity to seek more complete answers from Mr. Levie during those depositions.  That of course didn't happen.

The inadequate written responses to the Levie deposition questions was followed by the last minute "emergency" motion to derail the 30(b)(6) depositions.  Then, to hedge against a ruling that did not stay or delay the 30(b)(6) depositions, , AIAC Defendants came up with another plan—simply fabricating Mr. Levie's "conflict."   Afterwards, even after the fabrication came to light, AIAC Defendants refused to produce information relating to the inadequate testimony (and which had been the subject of prior discovery requests) and refused to put up a witness who could respond to the topics that the prior 30(b)(6) witness had been unable/unwilling to respond to. [Olsen Dec., Ex. 1 hereto].

In sum, for all of the reasons described herein, the Class Representatives respectfully request the Court to (1) impose all available sanctions against AIAC Defendants for having to file this motion, including reimbursement by AIAC Defendants of all Class Counsel's fees and costs related to the filing of this Motion and all of Class

Counsel's fees and costs related to the AIAC Defendants' 30(b)(6) depositions; (2) Order that AIAC Defendants be precluded from presenting any evidence, arguments or rebuttal on any fact that their 30(b)(6) witness was unable or refused to answer (due to lack of knowledge, lack of memory; lack of certainty; lack of preparation, asserted attorney-client privilege with regard to the existence of a retainer agreement, the identity of the client, whether the attorneys were paid and who paid them; etc.) (3) Order that AIAC Defendants be precluded from presenting any evidence, arguments or rebuttal in relation to any document(s) that AIAC Defendants failed to produce in advance of the 30(b)(6) depositions and (4) find as established fact that (i) the following were AIAC agents at all times during all of their Koffee Kup-related roles (whether pre- or post- acquisition) and that AIAC used and directed AMTC to pay them for their services: Jeff Sands; Dorset Partners, LLC, Mark Gauthier, David Cryer, John Tomlinson, Rhonda Halladay, Brian Shiau, Lyle Deitch, Bill Reichert, Bob Auger, Dave Sands, Deborah Cannavino, Marc Mandelman, Epstein Becker Green, John Cannavino, Cummings & Lockwood LLC, Joseph Selinger, TCORS, Alex Edelman, Primmer Piper Eggleston & Cramer PC; Erin Miller Heins; Langrock Sperry & Wool, LLP and Dinse; (ii) that documents produced in discovery in this matter and stamped as "KKBIC" were actually in AIAC's possession, custody and control; (iii) that no loan agreement (formal or informal) exists between AMTC and any other entity concerning the funds AIAC caused AMTC to pay which relate in any way to Koffee Kup, KKBIC and/or Kup Co and (iv) that to the extent any WARN notices were mailed, the mailings occurred after April 26, 2021.

Dated this 19th day of December, 2022.

By: /s/ Mary E. Olsen_____
   THE GARDNER FIRM
   Mary E. Olsen (OLSEM4818)
   M. Vance McCrary (MCCRM4402)
   182 St. Francis Street
   Suite 103
   Mobile, Alabama 36602
   P: (251) 433-8100
   F: (251) 433-8181

   LANKENAU & MILLER, LLP
   Stuart J. Miller (SJM 4276)
   Johnathan Miller
   100 Church Street, 8th FL
   New York, NY 10007
   P: (212) 581-5005
   F: (212) 581-2122

   CLEARY SHAHI & AICHER P.C.
   Thomas P. Aicher, Esq.
   110 Merchants Row, Third Floor
   Rutland, VT 05701
   (802) 775-8800
   tpa@clearyshahi.com

   *Counsel for the Class*

16