UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| MATTHEW CHANEY, et al. )<br>on behalf of himself and all others )<br>similarly situated, )<br>                                )<br>Plaintiffs, )<br>   v.                      )<br>                                )<br>VERMONT BREAD COMPANY, et al. )<br>                                )<br>Defendants. )<br>                                )<br>and )<br>                                )<br>LINDA JOY SULLIVAN, in her )<br>capacity as the Dissolution Receiver )<br>                                )<br>Intervenor-Defendant. ) | Civil Action No. 2:21-cv-120-wks |

**PLAINTIFFS' BRIEF IN OPPOSITION TO
THE RECEIVER'S MOTION FOR SUMMARY JUDGMENT**

The named Plaintiffs and the Class they represent respectfully oppose the Receiver's motion for summary judgment (ECF No. 197), as set forth herein.

The Plaintiffs and Class agree with the Receiver that AIAC, KKBIC, and Kup Co. constituted a single employer along with the Koffee Kup Entities (i.e., Koffee Kup Bakery, Inc. ("KKB"), Vermont Bread Company, Inc. ("VBC"), and Superior Bakery, Inc. ("SBI")). Plaintiffs further do not oppose the Receiver's arguments about the indemnification cross-claim against AIAC and KKBIC, except that the Koffee Kup Entities, as the direct employers, cannot evade liability for the WARN Act violations that their workforce suffered.

1.   **The WARN Act's "sale" provision does not insulate from liability the legally unchanged entities – the Koffee Kup Entities – who were, continuously, the direct employers of the Plaintiffs and the Class.**

First, the Receiver argues that the Koffee Kup Entities – the corporations that directly employed the workforce– are freed from WARN Act liability under 29 U.S.C. § 2101(b)(1).The argument has no basis in either the text or the purpose of that provision.

Section 2101(b)(1) exists in the WARN Act to cover situations in which the direct employer of the workforce *changes* as a result of a sale of the business. "The provision was added to the Act after some Members of Congress expressed concern that without it adventuresome plaintiffs … might well urge a court to hold 'employment loss' to cover <u>workers shifted from one employer to another</u> as the result of a sale." *Headrick v. Rockwell Int'l Corp.*, 24 F.3d 1272, 1280 (10th Cir. 1994) (emphasis supplied). "Congress enacted the subsection to clarify that <u>when employees are transferred from seller to buyer</u> as part of a sale, employees have not suffered an employment loss." *Burnsides v. MJ Optical, Inc.*, 128 F.3d 700, 702 (8th Cir. 1997) (emphasis supplied). "In that section Congress explicitly stated that employees who find themselves <u>transferred from one company to another</u> because of a sale simply are not to be held by any court to have suffered a remediable 'employment loss.'" *Headrick*, 24 F.3d at 1280 (emphasis supplied).

The point of the provision, in large part, is that even though the workforce has in some sense technically been terminated *en masse* by the seller – in that their employment with the seller has abruptly ended by virtue of the sale – that in itself is not a WARN-covered event. "Courts addressing § 2101(a)(6), whether in the context of a sale, plant closing, or mass layoff, have all applied a 'practical, effects-driven analysis of whether a break in employment actually occurred' to trigger the notification requirements of the WARN Act.'" *Wiltz v. M/G Transp. Servs.*, 128 F.3d 957, 964 (6th Cir. 1997), *quoting Gonzalez v. AMR Servs. Corp.*, 68 F.3d 1529, 1531 (2d Cir. 1995).

"Senator Hatch, who worded the sales exception to WARN, commented that 'it would seem fairly obvious that if the business continues on as before with no significant changes of any kind, that there would be no need to go through the formal notification process.'" *Int'l All. of Theatrical & Stage Emps. v. Compact Video Servs.*, 50 F.3d 1464, 1467-68 (9th Cir. 1995) (emphasis omitted).

This provision, both in its plain language and in its intent, says nothing to insulate from liability the direct employer – such as the Koffee Kup Entities here – that continues to exist throughout the relevant period and that employs the workforce continuously. Further, the Koffee Kup Entities' owner was, and remained, Kup Co. -- as Koffee Kup CFO Coles testified, the *owners* of Kup Co, changed, but the *structure* "from Kup Co. down stayed the same." [ECF No. 201-3, Coles Dep., p. 99, Lines 9-11]. The thing that changed about the ownership of Kup Co. was that AIAC, through KKBIC, acquired a majority and controlling interest in Kup Co. (and, with it, *de facto* control over Kup Co. and the Koffee Kup Entities).

When § 2101(b)(1) says that "the purchaser shall be responsible for providing notice for any plant closing or mass layoff" after the sale, that is part of the allocation of duties as between seller and purchaser. It does not mean that the continuously-existing direct employer, as a corporation itself, has no such responsibility for providing WARN Act notice. It does not mean that the continuously-existing direct employer is absolved from liability based on the sale of a controlling interest in a parent company. It does not remove the WARN Act duties and the WARN Act liability of an unchanged legal entity that is neither buyer nor seller. The provision removes potential liability from <u>the seller</u>, as reflected in cases cited by the Receiver; but the Koffee Kup Entities were not sellers here.

The Receiver wishes to read this provision as stating "When a controlling interest in an employer's parent is sold, the employer is no longer bound by the WARN Act; only the person

3

who bought the controlling interest in the employer's parent is bound." That would be a bizarre and striking provision, in conflict with the entire thrust of the WARN Act; and it is simply not what this provision says. It is unsurprising, therefore, that the Receiver cites no case reading the provision in that way.[1]

2. **The *de facto* control by AIAC and KKBIC, and their liability as part of the "single employer," do not remove the WARN Act liability of the Koffee Kup Entities themselves.**

Next, the Receiver argues that AIAC, KKBIC, and Kup Co. were part of the "single employer" entity, and that AIAC and KKBIC exercised *de facto* control including control over the decision to shut down the Koffee Kup Entities. Plaintiffs and the Class agree.

From this the Receiver argues that the Koffee Kup Entities themselves have no liability. But that is wrong. The Receiver cites no part of the WARN Act's text to support this novel argument. And the Receiver cites no case adopting the argument.

The Receiver seems to argue that it is somehow inherent in the "single employer" concept, that a *de facto* controlled direct employer is not liable. But that is not inherent in the concept, at all. "Single employer" liability under the WARN Act is joint and several . The doctrine does not insulate the direct employer; on the contrary, it recognizes that all components of the "single employer" are jointly and severally liable.

---

[1] The Receiver cites one unpublished case that mentions § 2101(b)(1) on facts involving a stock purchase, *Kirby v. Cyprus Amax Minerals Co.*, 2000 U.S. App. LEXIS 839 (10th Cir. Jan. 24, 2000). But even that unpublished case does nothing for the Receiver's argument. There, the plaintiffs were attempting to impose WARN Act liability on the "seller" in a stock transaction, when it had sold all the stock in a subsidiary to a new operator and – more than a year later – the subsidiary under its new ownership shut down and went bankrupt. The Court reached the obvious conclusion that the seller was not the employer of the workforce, when the workplace shut down more than a year after the sale. The Court mentioned § 2101(b)(1) in the course of that simple conclusion. The case does and says nothing to insulate the direct employer itself from liability.

> A plaintiff asserting a single employer claim under the WARN Act, however, may choose not to name a direct employer without foundering on Rule 19, as the Supreme Court has held that joint tortfeasors are not indispensable parties under Rule 19(a). See *Temple v. Synthes Corp. Ltd.*, 498 U.S. 5, 8, 111 S. Ct. 315, 112 L. Ed. 2d 263 (1990). According to the Advisory Committee Notes to Rule 19(a), "a tortfeasor with the usual 'joint-and-several' liability is merely a permissive party to an action against another with like liability.". …
>
> A direct employer, in the context of a WARN Act claim brought under a single employer theory, is such a joint tortfeasor.

*Garner v. Behrman Bros. IV, LLC*, 260 F. Supp. 3d 369, 381 (S.D.N.Y. 2017); *Law v. Am. Capital Strategies, Ltd.*, 2007 U.S. Dist. LEXIS 5936, *51-52 (M.D. Tenn. Jan. 26, 2007) (likewise holding that direct employer was not an indispensable party against alleged "single employer" defendant; "because of joint and several liability, joint tortfeasors and co-conspirators are not indispensable parties under the Federal Rules of Civil Procedure").

As this Court recognized in the class certification order, the single-employer doctrine asks "whether the nominally separate corporations actually functioned as a single entity." *Chaney v. Vt. Bread Co.*, 2022 U.S. Dist. LEXIS 147137, at *8 (D. Vt. Aug. 17, 2022), quoting *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 503-04 (3d Cir. 2001). Joint and several liability naturally follows from the finding that the various components were, in the eyes of the law, "a single entity."

The Receiver cites *Austen v. Catterton Partners V, LP*, 709 F. Supp. 2d 168 (D. Conn. 2010), and *Vogt v. Greenmarine Holding, LLC*, 318 F. Supp. 2d 136 (S.D.N.Y. 2004). But the Receiver points to nothing in those case holding that a direct employer is not liable under the WARN Act if another component of the "single employer" exercised *de facto* control.

While Plaintiffs agree that *de facto* control lay with AIAC Defendants, it is still true that the employment of the Plaintiffs and the Class could not have ended – *de jure* as well as *de facto* – without action by the Koffee Kup Entities. No one can actually terminate an employment relationship other than the employer and the employee. The Receiver does not deny, and cannot

5

deny, that Koffee Kup, Vermont, and Superior stopped paying the Plaintiffs and the Class, stopped assigning shifts and told the employees (belatedly) that their jobs had ended. The Receiver does not deny – and cannot deny – that Koffee Kup, for itself and subsidiaries, said as much in the belated WARN Act letters to the states of Vermont and Connecticut, and employees, providing after-the-fact notification that they were terminating their workforce. [Plaintiffs' Facts ¶¶ 7-9; ECF No. 201-29]. The Receiver does not deny, and cannot deny, that the Koffee Kup CFO, Mr. Coles, took active part in the shutdown (once Sands informed him of the decision)– calling the operating heads of the Koffee Kup Entities, telling them to stop all work and to cancel upcoming shifts, and taking part in planning the dissemination of the too-late notices to employees [Additional Fact in Response to Receiver's Facts, Exhibit 1, Coles Deposition, pp. 121-22, 124-25, 127-29]. Further, Koffee Kup HR employees, even though controlled from above like Coles, also took active part in the shutdown—communicating with employees and taking part in planning the dissemination of the too-late notices to employees, as well as work on the notices, themselves, and addressing benefits issues for terminated employees. [Additional Fact in Response to Receiver's Facts, ¶ 2 (ECF No. 203-7, p.10, 12 of 14)]. These were actions that the Koffee Kup Entities (as the direct employers) indisputably took in ceasing operations.

**3.    The Receiver's invocation of the "unforeseeable business circumstance" provision lacks merit.**

The Receiver next invokes the WARN Act's "unforeseeable business circumstance" provision, 29 U.S.C. § 2102(b)(2)(A). What was this supposedly "unforeseeable business circumstance"? According to the Receiver it was "the AIAC/KKBIC/Kup Co. decision to close the plants." [ECF No. . 197, pp. 25-26 of 29].

"The entity(ies) with *de facto* control suddenly told the direct employers to shut down" is <u>not</u> within the "unforeseeable business circumstance" provision, in a way that would insulate the direct employer from WARN Act liability. If it were, it would create a huge hole in the WARN Act. (Imagine how many employers would use this argument, to point the finger at a shell parent with minimal assets and thus ensure that employees could not obtain any WARN Act relief.) The decision to shut down without advance notice is the decision to violate the WARN Act; it cannot, at the same time, be the excuse for violating the WARN Act.

The Receiver agrees, indeed affirmatively argues, that AIAC, KKBIC, Kup Co, and the Koffee Kup Entities were a "single employer." The decision made by that single employer logically cannot constitute an "unforeseeable business circumstance." "An important indicator of a business circumstance that is not reasonably foreseeable is that the circumstance is caused by some sudden, dramatic, and unexpected action or condition outside the employer's control." 20 C.F.R. § 639.9(b)(1). <u>This decision was not outside the single employer's control</u>.

Inherent in the very concept of the single-employer doctrine is that it "treat[s]" subsidiaries "as part of the parent." *Guippone v. BH S&B Holdings LLC*, 737 F.3d 221, 226 (2d Cir. 2013), quoting 20 C.F.R. § 639.3(a)(3). (And, as the Receiver points out, *Guippone* and other cases make clear that the same doctrine applies to entities other than strict "parents.") When a single-employer finding is made – and the Receiver urges that it should be made here – the components of that single employer are treated as one entity, <u>the employer</u>. Together they are the "business entity" that employs the employees, 29 U.S.C. § 2101(a)(1). *Guippone*, 737 F.3d at 226 (at stake in the single-employer question is whether "the nominally separate corporations actually functioned as a single entity"). A decision by that entity is not an unforeseeable business circumstance.

Moreover, the defendants gave <u>no</u> advance notice of the closings;[2] and the belated WARN Act letters did not even offer this mind-bending suggestion that "the AIAC/KKBIC/Kup Co decision to close the plants" was the "unforeseeable business circumstance" that caused the shutdowns and therefore justified shortened notice. As discussed in the Plaintiffs' brief in support of summary judgment, an employer that gives <u>no</u> advance WARN Act notice cannot rely on the statutory defenses; and even an employer that gives shortened notice cannot rely on a supposed "unforeseeable business circumstance" that it did not point to in the belated notice. *See* 29 U.S.C. § 2102(b)(3) ("An employer relying on this subsection shall give as much notice as is practicable and at that time shall give a brief statement of the basis for reducing the notification period.").

As even the belated notice did not offer any reference to any unforeseeable or surprising event that was the cause of the layoffs referenced therein, much less what the Receiver now offers as the "unforeseeable business circumstance" – in paraphrase, "we could not have given more notice because it was AIAC/KKBIC/Kup Co. who did this to us" – there was *never* any proper WARN Act notice. [Plaintiffs' Facts ¶¶ 7-8; ECF No. 201-29].  So the "unforeseeable business circumstance" provision is categorically unavailable. "Courts to consider the issue appear to have uniformly held that giving proper shortened notice is a prerequisite to invoking one of the statutory exceptions." *Newman v. Crane*, 435 F. Supp. 3d 834, 843 (N.D. Ill. 2020).

For the same reasons, the Receiver's final argument – attempting to limit the days of relief awarded against the Koffee Kup Entities – is also without merit. That final argument is merely a reworking of the "unforeseeable business circumstance" argument, and fails for the same reasons.

---

[2] According to the Receiver's Facts, herein, notices were handed out (to approximately 60 employees) or mailed to employees on April 27, 2021, at the earliest.  [Receiver's Facts ¶ 35-36].

Without ever having given proper WARN Act notice, the entire single employer is jointly and severally liable for the full sixty days under the WARN Act.

Respectfully submitted this 1st day of May, 2023.

By:  /s/      Mary E. Olsen
THE GARDNER FIRM
Mary E. Olsen (OLSEM4818)
M. Vance McCrary (MCCRM4402)
182 St. Francis Street
Suite 103
Mobile, Alabama 36602
P: (251) 433-8100
F: (251) 433-8181

LANKENAU & MILLER, LLP
Stuart J. Miller (SJM 4276)
Johnathan Miller
100 Church Street, 8th FL
New York, NY 10007
P: (212) 581-5005
F: (212) 581-2122

CLEARY SHAHI & AICHER P.C.
Thomas P. Aicher, Esq.
110 Merchants Row, Third Floor
Rutland, VT 05701
(802) 775-8800
tpa@clearyshahi.com

*Counsel for the Class*