## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF VERMONT

| | | |
|---|---|---|
| MATTHEW CHANEY, NADINE MILLER and ARTHUR GUSTAFSON, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>VERMONT BREAD COMPANY, SUPERIOR BAKERY, INC., KOFFEE KUP BAKERY, INC., KOFFEE KUP DISTRIBUTION, LLC, KK BAKERY INVESTMENT COMPANY LLC, KK BAKERY HOLDING ACQUISITION COMPANY and AMERICAN INDUSTRIAL ACQUISITION CORPORATION,<br>                    Defendants,<br><br>          and<br><br>LINDA JOY SULLIVAN, in her capacity as the Dissolution Receiver for Koffee Kup Bakery, Inc., Vermont Bread Company, Inc. and Superior Bakery, Inc.,<br>                    Intervenor-Defendant-<br>                    Crossclaimant,<br><br>          v.<br><br>KK BAKERY INVESTMENT COMPANY LLC, KK BAKERY HOLDING ACQUISITION COMPANY and AMERICAN INDUSTRIAL ACQUISITION CORPORATION,<br>                    Crossclaim-Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 2:21-cv-120-WKS<br><br><br><br><br><br><br><br>**DISSOLUTION RECEIVER'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ENTERING PARTIAL FINAL JUDGMENT AGAINST DEFENDANTS AND CROSSCLAIM-DEFENDANTS AMERICAN INDUSTRIAL ACQUISITION CORPORATION AND KK BAKERY INVESTMENT COMPANY LLC** |

Intervenor-Defendant-Crossclaimant Linda Joy Sullivan, in her official capacity as the Dissolution Receiver (the "Dissolution Receiver") for Koffee Kup Bakery, Inc. ("KKB"), Vermont Bread Company, Inc. ("VBC") and Superior Bakery, Inc. ("SBI", and together with KKB and VBC, the "Koffee Kup Entities"), by and through her attorneys, Dentons US LLP, Phillips, Dunn, Shriver & Carroll, P.C., and Sheehey Furlong & Behm P.C., submits this reply (the "Reply

US_ACTIVE\125982261\V-16

Memorandum") in support of her motion for summary judgment (the "Motion") (ECF No. 255) (a) determining the damages claim of the plaintiff class (the "Plaintiff Class") against Defendants American Industrial Acquisition Corporation ("AIAC") and KK Bakery Investment Company LLC ("KKBIC", and jointly with AIAC, the "AIAC Defendants"); and (b) directing entry of a partial final judgment against the AIAC Defendants for (i) the as-then-determined damages claim on behalf of the Plaintiff Class, and (ii) indemnification of the Koffee Kup Entities through the Dissolution Receiver.  Specifically, this Reply Memorandum addresses the January 19, 2024 oppositions to said Motion filed by the Plaintiff Class (ECF No. 263) and by the AIAC Defendants (ECF No. 262).  As shown below, neither the Plaintiff Class nor the AIAC Defendants raise any material obstacle to granting the Motion.

**POINT I:**

**THE OPPOSITION ARGUMENTS DO NOT WARRANT ANY MATERIAL CHANGE TO THE DISSOLUTION RECEIVER'S DAMAGES FIGURE**

**A.      Plaintiff Class's Arguments**

The Plaintiff Class agrees with the vast majority of the Dissolution Receiver's damages calculations, but argues:  (a) fifteen (15) employees should not have their claims reduced per 29 U.S.C. § 2104(a)(2) by payments for post-shutdown work, and (b) two (2) excluded employees were on medical leave and expected to return to work (*Plaintiffs' Response to the Dissolution Receiver's Motion for Partial Summary Judgment and Other Relief (ECF NO. 255)*, dated January 19, 2024 (ECF No. 263) (the "Plaintiffs' Response") pp. 1 – 8).  As set forth below, the first argument is without merit for a variety of reasons; however, in light of new evidence Plaintiff Class has submitted on the two (2) excluded employees, the Dissolution Receiver no longer opposes their claims.

2

Plaintiff Class's first argument – that fifteen (15) former employees should not have their damages claims reduced by their post-shutdown earnings – hinges on 29 U.S.C. § 2104(a)(2), which provides an employer's liability under the federal Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101, et seq. (the "WARN Act") "shall be reduced by – (A) wages paid by the employer to the employee for the period of the violation . . . and (C) any payment by the employer to a third party or trustee (such as premiums for health benefits or payments to a defined contribution pension plan) on behalf of and attributable to the employee for the period of the violation."  The Plaintiff Class does not dispute the post-shutdown monies paid by the KeyBank Receiver to the fifteen employees were monies of the Koffee Kup Entities, but instead make several arguments all of which fail.

The Plaintiff Class's primary argument is that the former employees signed contracts as *independent contractors* with the receiver previously appointed in a separate action initiated by KeyBank, N.A. (the "KeyBank Receiver"), and they therefore received "independent contractor payments," not "wages."  In support of that proposition, Plaintiff Class cites a definition for wages in Black's Law Dictionary (Plaintiffs' Response pp. 3 – 5), which as discussed below, ignores and is inconsistent with Vermont law that uses the ABC Test to determine whether an individual is an employee receiving wages or an independent contractor.  As shown below, there are several defects with Plaintiff Class's argument.

First, the payments at issue need not be "wages" if they fall within subsection 2104(a)(2)(C)'s coverage for "payments . . . to a third party or trustee . . . on behalf of and attributable to the employee . . . ."  There is no dispute the monies that the KeyBank Receiver used to pay the individuals came to the KeyBank Receiver from the Koffee Kup Entities, and as such fall squarely within subsection 2104(a)(2)(C)'s language:  "payments . . . to a . . . trustee . . .

attributable to the employee . . . ."   Those payments must therefore reduce the damages calculations.[1]

The Plaintiff Class's attempts to avoid the above terms of subsection 2104(a)(2)(C) contradict both the plain language and purpose of the subsection.   Plaintiffs argue:   (1) that subsection only covers *benefits* payments, because the "such as" examples cited in that subsection (such as premiums for health benefits and a defined contribution pension plan) are benefits; (2) the "payments" here are those *from* the KeyBank Receiver to the individuals, and thus not "to a third party or trustee;"  and (3) that even if the KeyBank Receiver used the Koffee Kup Entities' monies to pay the individuals, the monies used by the KeyBank Receiver were not "on behalf of and attributable to" said employees (Plaintiffs' Response pp. 4 – 5).   These arguments misconstrue both the plain language and purpose of the statute.   Including examples in a statute does not limit the broader statutory language to those examples *Pfizer, Inc v. United States Dep't of Health & Hum. Servs.*, 42 F.4th 67, 76 (2d Cir. 2022), *cert. denied sub nom. Pfizer Inc. v. Dep't of Health & Hum. Servs.*, 143 S. Ct. 626, 214 L. Ed. 2d 370 (2023) (discussing difference between *ejusdem generis* cannon of construction and non-exhaustive examples in similar statutory context). Furthermore, it cannot be questioned that monies paid to an individual are "on behalf of and attributable to" only that individual.   To whom else would the monies be attributable?   Moreover, the purpose of subsection 2104(a)(2) cannot be to enrich employees with post-shutdown double-dipping (*i.e.*, receiving payment from Koffee Kup Entities assets for both the WARN Act period and work during that period), but rather the purpose is to reduce an employer's liability for post-shut down payments of the employer's monies going directly or indirectly for the benefit of employees.   That is the case here.

---

[1] Indeed, the same would be true if the Koffee Kup Entities monies had been given to the employees for up to sixty (60) days of wages and benefits even if they did not work at all.

Another reason the post-shut down payments should reduce the fifteen (15) employees' claims here is that the employees cannot legitimately be considered independent contractors, and thus the payments fall within the term "wages" in subsection 2104(a)(2)(A). The KeyBank Receiver's apparent attempt to treat these individuals as independent contractors is not dispositive and appears to be contrary to Vermont law. In fact, Vermont's Unemployment Compensation Act codifies the "ABC Test" (Vt. Stat. Ann. tit. 21, § 1301(6)(B)) for distinguishing between employees and independent contractors (*see also* https://labor.vermont.gov/document/who-employee-vs-independent-contractor ("Vt. DOL IC Release"), attached hereto as **Exhibit 1**).

The Supreme Court of Vermont describes the ABC Test as follows:  to determine whether an individual is an employee or an independent contractor, an employer must demonstrate that "(A) the individual is free from the employer's control or direction; (B) the individual's service is either outside the employer's usual course of business or performed outside the employer's place of business; *and* (C) the individual is independently established" (*In re Bourbeau Custom Homes, Inc.*, 2017 VT 51, ¶ 6, 205 Vt. 42, 46, 171 A.3d 40, 43 (2017) (emphasis added)). Failure to establish any part of the ABC Test renders the individual an "employee" of the employer, and the *presumption* is that any individual who receives wages from an employer for performing services is an employee (*id.* pp. 47). At all times, the burden is on the *employer* to prove the individual is instead an independent contractor under the ABC Test (*id.*).

Regarding part A of the ABC Test, the bar is high, as the Supreme Court of Vermont liberally construes "control or direction" (*Fleece on Earth v. Dep't of Emp. & Training*, 2007 VT 29, ¶ 16, 181 Vt. 458, 464, 923 A.2d 594, 599 (2007) (The Supreme Court of Vermont "has consistently held that the statutory scheme at issue here is broader than the common law master-servant relation, and it draws into its sweep workers who might be independent contractors under

the common law.")).  *See also Great N. Constr., Inc. v. Dep't of Lab.*, 2016 VT 126, ¶ 16, 204 Vt. 1, 10, 161 A.3d 1207, 1214 (2016).  Here, the KeyBank Receiver exerted complete control and direction over the fifteen (15) individuals, such that they squarely fall within "employees" under the ABC Test.  *See* transcript excerpts of the June 1, 2022 deposition of Mark Coles, the former CFO of the Koffee Kup Entities who worked post-closing under the direction and supervision of the KeyBank Receiver attached hereto as **Exhibit 2** (the "Coles Dep"), at pp. 40, lines 6-11; pp. 49, line 18 to pp. 50, line 6; pp. 57, line 11 to pp. 58, line 4; pp. 80, line 19 to pp. 81, line 14, pp. 130, line 18 to pp. 131 line 10.

Regarding part B, the Supreme Court looks to whether the individual's work is "so central in the ordinary course" of the employer's work that it is properly characterized as "core services of such business" (*i.e.*, whether the employee's services are the "nature-of-the-business") (*In re Bourbeau Custom Homes, Inc.*, 205 Vt. at 53).  This part captures a considerable number of individuals who might otherwise be characterized as independent contractors because they exercise a certain degree of autonomy.  In *In re Bourbeau Custom Homes, Inc.*, the Supreme Court distinguished individuals with specialized skills, including those who have professional licenses or specialized carpentry skills, from ordinary carpenters, whose services were core to the employer's home-building business (*id.*).  Here, the fifteen (15) individuals also fail the ABC Test because they did not have specialized skills apart from the core functions of the Koffee Kup Entities' business, which the KeyBank Receiver was maintaining to a degree prior to sale of the assets.

Even assuming *arguendo* that the fifteen (15) individuals meet parts A and B of the ABC Test, which the Dissolution Receiver disputes, they each fail part C.  Regarding part C, the Supreme Court focused on "whether the worker is 'independently established providing the same

or similar services as they provide for the employer,' not merely whether the purported employee has independent employment of any sort, and the relevant inquiry involves the purported worker's ability to sustain an economic existence independent of the purported employer (*Great N. Constr., Inc. v. Dep't of Lab.*, 204 Vt. at 15-16 (citations omitted)). If not, then the individual is deemed an employee rather than an independent contractor. In *Great Northern Construction, Inc.*, the Supreme Court upheld the employee determination regarding one of the individuals because, *inter alia*, the individual was not registered as an independent business with the Secretary of State, did not file a Schedule C form with his federal tax returns, did not have any advertising besides word of mouth (which indicated he did not consider himself self-employed), and his economic existence was not independent of the employer (*id.*). On the other hand, the Supreme Court overturned the employee determination regarding the other individual whose services were highly specialized, were paid for by project (not by the hour), were not a key component of the employer's business, and were independently established (*id.* at 13-15).

Here, each of the fifteen (15) individuals at issue were paid by the hour, were not registered as an independent business with the Vermont Secretary of State, did not otherwise hold themselves out as independent contractors, did not provide similar services to any other person or entity, and did not have economic existence performing similar work independent of the Koffee Kup Entities' business while employed by the KeyBank Receiver. In short, they are not independent contractors.

More succinctly, the Vermont Department of Labor implements the ABC Test by simply asking:

A.  Is the individual free from control and direction over the performance of services?
Did the individual bid for the job, and get paid by the job?
Did the individual complete the job without direction, supervision, or set hours?

B.  Were the individual's services outside the usual services, or outside the location, of the enterprise who hired the individual?

  C.  Was the individual customarily engaged in an independently established trade, occupation, profession or business?

(VT. DOL IC Release, **Exhibit 1** hereto).

The answers to all these questions are resounding "No's" leaving little doubt none of the post-shut down payments went to individuals acting as independent contractors, but rather went to employees and should have been characterized as "wages" pursuant to 29 U.S.C. § 2104(a)(2)(A).

In short, Plaintiff Class's arguments to avoid subsections 2104(a)(2)(A) and (C) are unavailing, and the post-shut down payments to the fifteen (15) employees from the assets of the Koffee Kup Entities should reduce their WARN Act claims.

Plaintiff Class's other dispute relates to the damages calculations that two (2) employees,[2] Carpenter and Smith, who were on medical leave at the time of the shutdown and reasonably expected to return to work, and therefore are "aggrieved employees" entitled to WARN Act claims (Plaintiffs' Response pp. 6 – 8). Both former employees submitted declarations attesting to their expectation to return to work (Exhibit B to Plaintiffs' Response). The Dissolution Receiver had excluded these former employees from the damages calculations because these individuals had not worked for the Koffee Kup Entities in 2021 and because there was no evidence, they had a reasonable expectation of returning. Based on the above-referenced declarations, the Dissolution Receiver is amenable to including their claims in the calculations.[3]

---

[2] Citing to the Note column in the Dissolution Receiver's spreadsheet, Plaintiff Class also states that the Dissolution Receiver incorrectly contends that Stephanie Hanker worked at Colchester. She does not. As explained in the expanded Note section of the Spreadsheet, the only basis for the reduction asserted by the Dissolution Receiver is that the amount received post-closing from Koffee Kup Entities' assets exceeded the amount that would otherwise have been due under the WARN Act. However, those that worked at Colchester are not within the covered class, as even Plaintiff Class counsel informed Mark Coles. *See* Coles Dep, **Exhibit 2**, pp. 92, lines 2 – 20.

[3] The declarations alone, without support from their doctors and specificity as to when they would have been permitted to return to work, would normally not be accepted by the Dissolution Receiver. However, given the nominal additional amounts involved in comparison to the cost in time and expense to all parties in pursuing this further, the Dissolution Receiver is prepared to accept their declarations as adequate support for their intent to return.

**B.    The AIAC Defendants' Arguments**

Unlike the Plaintiff Class, the AIAC Defendants do not agree with any of the Dissolution Receiver's damages figures and instead make a variety of arguments.  As shown below, all of these arguments are meritless.

The AIAC Defendants' first arguments, without any supporting authority, are a set of evidentiary contentions:  that the damages figures are only based on inadmissible spreadsheets prepared by counsel founded on unproven data that cannot be resolved on summary judgment but rather require a hearing (*Defendants American Industrial Acquisition Corporation And KK Bakery Investment Company LLC's Response and Memorandum in Opposition to Dissolution Receiver's Motion for Partial Summary Judgment*, dated January 19, 2024 (ECF No. 262) (the "AIAC Defendants' Response") pp. 4 – 6).  These arguments ignore the law and the case record to date.  As explained in the Dissolution Receiver's December 20, 2023 Motion (ECF No. 255) pp. 4 – 5, the foundational salary and wage data on the 3/31/2023 Class Spreadsheet[4] and the 12/20/2023 DR Spreadsheet, which was prepared by the Dissolution Receiver and her staff (12/20/2023 Wolfson Dec. (ECF No. 257) Ex. 1) are from a Census produced and authenticated by the KKB CFO Mark Coles along with the underlying payroll records.  The corrections and other adjustments to the Census figures in the 12/20/2023 DR Spreadsheet are explained in the 12/20/2023 Wolfson Declaration.  These are straightforward steps that require no expert witnesses, but rather are consistent with the "liquidated damages" remedy of the WARN Act:

> For violations of the notice provisions, damages are to be measured by the wages … the employee would have received had the plant remained open or the layoff had been deferred until the conclusion of the notice period, less any wages or fringe benefits received from the violating employer during the period. *This is in effect a liquidated damages provisions* [sic], *designed to* penalize the wrongdoing employer, deter future violations, and *facilitate simplified damages proceedings.*

---

[4] Unless otherwise defined herein, defined terms are the same as those used in the Dissolution Receiver's December 20, 2023 Motion and Memorandum in support of this Motion.

9

*Carpenters Dist. Council of New Orleans & Vicinity v. Dillard Dept. Stores, Inc.*, 15 F.3d 1275, 1284 (5th Cir. 1994) (quoting Sen. Report No. 62, 100th Cong., 1st Sess. 24 (1987)) (emphasis added; original and case emphasis deleted).

Damages can be determined based solely on documentary evidence (*1199 SEIU United Healthcare Workers East v. South Bronx Mental Health Council, Inc.*, No. 13 Civ. 2768, 2013 WL 6003731, at *4 (S.D.N.Y. Nov. 13, 2013) (citing *Chun Jie Yin v. Kim*, No. 07 CV 1236, 2008 WL 906736, at *3 (E.D.N.Y. 2008)).

The documentary evidence relied upon in the *1199 SEIU* case was daily wage calculations for each affected employee (2013 WL at *4), which is the same as contained in the above-referenced Census and ADP records recounted in the spreadsheets provided here. The AIAC Defendants' baseless arguments challenging that evidence are without merit.

Similarly unavailing are the AIAC Defendants' unsupported attacks on the Plaintiff Class and the Dissolution Receiver following the accepted practice of presenting the spreadsheets under the declarations of counsel (AIAC Defendants' Response pp. 6 – 7). There is no attorney testimony involving credibility issues here, but rather uncontested issues of authenticated data compilation. The ethical rules expressly condone such "testimony relate[d] to an uncontested issue" (Model Rule of Professional Conduct 3.7(a)(1), quoted at the AIAC Defendants' Response pp. 7). The AIAC Defendants' argument is specious. Nevertheless, and for the avoidance of any doubt, attached hereto as **Exhibit 3** is the January 29, 2024 Declaration of Heber Maughan, who works with the Dissolution Receiver, attesting to the accuracy of the 12/20/23 Wolfson Declaration.

The AIAC Defendants also argue, in a remarkable display of audacity, the Motion should be denied because they are entitled to a reduction in their liability based on their "good faith" under 29 U.S.C. § 2104(a)(4) for alleged successful efforts to find employment for the Koffee Kup

10

Entities' employees, citing a declaration of Jeffrey Sands (the "Sands Declaration") that was served and filed late, on January 24, 2024, five (5) days after the deadline and service/filings of the AIAC Defendants' Response (AIAC Defendants' Response pp. 6).  There are numerous defects to this argument and the Sands Declaration:  ***first***, subsection 2104(a)(4) limits the "good faith" reduction to "the act or omission that violated this chapter," while the alleged acts here were subsequent to the WARN-Act violations; ***second***, Sands was only *informed* that jobs were offered and/or secured, and not a single example was provided, making the statement inadmissible hearsay; and ***third***, the AIAC Defendants did not allege any effort to find jobs for the former employees in their motion for summary judgment and should not be permitted to do so now.   The Sands Declaration is irrelevant and inadmissible.

In short, with the exception of the adjustments for employees Carpenter and Smith[5], whose claims the Dissolution Receiver no longer opposes, the Dissolution Receiver's damage calculations are well-founded in authenticated data and should be granted summary judgment.

### POINT II:
#### A PARTIAL FINAL JUDGMENT AGAINST THE AIAC DEFENDANTS WOULD SERVE JUDICIAL EFFICIENCY AND EQUITIES BETWEEN THE PARTIES

Both the Plaintiff Class and the AIAC Defendants oppose a partial final judgment, but as shown below their arguments mischaracterize both this Court's prior rulings and the prospect of appeals to distort the efficiencies and equitable benefits from such a partial final judgment.

Subject to resolving the above damages issues, the Plaintiff Class agrees the case should proceed to a judgment, but the Plaintiff Class favors a judgment against all defendants, including the Koffee Kup Entities, making several arguments:  ***first***, a partial judgment now could risk piecemeal appeals with related subjects on the same factual record; ***second***, the AIAC Defendants

---

[5] These adjustments are reflected in the Amended Spreadsheet attached to Heber Maughan Declaration (**Exhibit 3**).

can be expected to drag out post-judgment collection proceedings by insisting there are no funds to pay any judgment, so the better course would be to obtain a judgment against the Koffee Kup Entities who should pay at least a substantial part quickly; and ***third***, resolving the Koffee Kup Entities' good faith should not be time-consuming (Plaintiffs' Response pp. 8 – 10).   The AIAC Defendants argue:  ***first***, the claims against the AIAC Defendants to be certified under Rule 54(b) arise from the same set of facts as the good-faith reduction of the claim against the Koffee Kup Entities, which are thus not separable; ***second***, the AIAC Defendants claim for a good-faith reduction of their liability must still be decided; ***third***, the Koffee Kup Entities' good-faith liability reduction must be resolved to know the extent of the AIAC Defendants' indemnity; ***fourth***, *Ginett v. Computer Task Group*, *Inc.*, 962 F.2d 1085 (2d Cir. 1992) is distinguishable because there a second appeal would not have to review the same issues as any first appeal of the severance judgment; and ***fifth***, the AIAC Defendants will appeal, and thus delay any payment on the judgment and any payment to unsecured creditors (AIAC Defendants' Response pp. 10 – 14).

The principal answers to all the above arguments are:  (1) the factual record related to the Koffee Kup Entities' good-faith reduction claim has little or nothing to do with the case against the AIAC Defendants, and the claims are clearly "separable" (*Ginett*, 962 F.2d at 1096 ("Only those claims 'inherently inseparable' from or 'inextricably interrelated' to each other are inappropriate for rule 54(b) certification")); and (2) the equities favor a judgment now against the AIAC Defendants rather than the innocent Koffee Kup Entities and their creditors[6].  Indeed, the

---

[6] Plaintiff Class's desire to obtain a final judgment now against the Koffee Kup Entities will not result in a quicker payment from the Koffee Kup Entities to the Class members.  As this Court is aware, the Koffee Kup Entities are in dissolution proceedings pending before Judge Hoar in the Vermont Superior Court.  As of this date, the Dissolution Receiver has sought and been granted authority to make an interim distribution of twenty (20%) percent on allowed claims, with the same 20% of *all* disputed claims placed into a reserve account.  (The Class Proof of Claim filed by the Plaintiff Class in the Dissolution Proceedings is only one of a variety of disputed claims).  At present, the Dissolution Receiver has reserved twenty (20%) percent of the Plaintiff Class claim based on the amount asserted by Plaintiff Class in its motion for summary judgment.  If the Court grants the Dissolution Receiver's Motion in the amount of $2,772,908.97 as against the AIAC Defendants, then, pending a subsequent determination of any good faith

AIAC Defendants' promised appeal from the Rule 54(b) judgment will help expedite the payment to the Plaintiff Class because the appellants will be obliged to post a bond that should eliminate collection and payment problems. As for the other lesser arguments: (1) the AIAC Defendants simply have no claim for good-faith reduction of their liability, and the Court did not leave that door open for the AIAC Defendants as it did for the Koffee Kup entities in its August 24, 2023 Decision and Order (ECF No. 238); (2) the good-faith reduction for the Koffee Kup Entities need not be resolved before a judgment (and appeal) of the indemnity issue (*McMunn v. Hertz Equipment Rental Corp.*, 791 F.2d 88 (7th Cir. 1986)); and (3) this Court can resolve whether the *Ginett* case is relevant.

**CONCLUSION**

For all the foregoing reasons, the Dissolution Receiver respectfully submits this Court should: (a) under Fed. R. Civ. P. 56, grant summary judgment finding the Plaintiff Class's damages claims against the AIAC Defendants to be in the amount of $2,772,908.97; (b) under Fed. R. Civ. P. 54(b), direct entry of a partial final judgment on behalf of the Plaintiff Class against the AIAC Defendants in the amount of $2,772,908.97; (c) continue to defer any decision on whether

---

reduction the Koffee Kup Entities may be entitled to, the Dissolution Receiver will continue to hold twenty (20%) percent of that amount in reserve for Plaintiff Class, plus a pro rata percentage based on that amount if any further interim distribution is made. To the extent the Court were to require the Dissolution Receiver to litigate the right of the Koffee Kup Entities to a good faith reduction now, the amount of the estates' liability could be no more than that $2,772,908.97, and indeed could likely be materially less. If less, then that would be the amount upon which the current or future reserves for the Plaintiff Class would be determined. Once the AIAC Defendants pay the Plaintiff Class the amount they owe, the reserves held by the Dissolution Receiver for the Plaintiff Class will be eliminated, or at least further reduced. The Dissolution Receiver will not be in a position to make a final distribution to *any* creditor until the AIAC Defendants pay the Plaintiff Class the amount they owe and all other disputed claims against the estates are resolved. Nor can the Dissolution Receiver pay the claims of the Class Plaintiffs until the Order of this Court becomes final, for if payment is made in advance and the Order is reversed or modified, the estate risks the inability to recover funds paid to hundreds of former employees. The Dissolution Receiver expects the Plaintiff Class to vigorously pursue payment by the AIAC Defendants, just as the Dissolution Receiver intends to vigorously do to enforce its indemnity. If, at the end of the day, AIAC Defendants do not pay in full, and the Court rules that the Koffee Kup Entities are liable for any amount after considering their good faith reduction , because the Dissolution Receiver has reserved based upon the amount due Plaintiff Class from the AIAC Defendants, the funds will be there to pay the former employees their pro rata share of the estates' assets.

the  Dissolution Receiver is entitled to a reduction of the Koffee Kup Entities potential exposure based on said Entities' good faith; and (d) under Fed. R. Civ. P. 54(b) and 56, direct entry of a final judgment on behalf of the Dissolution Receiver against the AIAC Defendants for indemnification related to any liability to the Plaintiff Class the Koffee Kup Entities may ultimately may have.

Dated: February 1, 2024                    DENTONS US LLP
       New York, New York

                            By:   */s/ Peter D. Wolfson*
                                  Peter D. Wolfson (admitted pro hac vice)
                                  Arthur H. Ruegger (admitted pro hac vice)
                                  1221 Avenue of the Americas
                                  New York, NY 10021
                                  Tel.: (212) 768-6700
                                  Email: peter.wolfson@dentons.com
                                         arthur.ruegger@dentons.com

                                  PHILLIPS, DUNN, SHRIVER & CARROLL, P.C.
                                  David Dunn, Esq.
                                  147 Western Avenue
                                  Brattleboro, VT 05301
                                  Tel.: (802) 257-7244, ext. 112
                                  Email: ddunn@pdsclaw.com

                                  SHEEHEY FURLONG & BEHM, P.C.
                                  Ian P. Carleton, Esq.
                                  30 Main Street, 6th floor
                                  P.O. Box 66
                                  Burlington, VT 05402-0066
                                  Tel.: (802) 864-9891
                                  Email: icarleton@sheeheyvt.com

                                  *Counsel to Intervenor-Defendant-Crossclaimant*
                                  *Linda Joy Sullivan, Dissolution Receiver for*
                                  *Koffee Kup Bakery, Inc,*
                                  *Vermont Bread Company, and*
                                  *Superior Bakery, Inc.*

14