UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Matthew Chaney, Nadine          )
Miller and Arthur Gustafson,    )
on behalf of themselves and     )
all others similarly            )
situated,                       )
                                )
        Plaintiffs,             )
                                )
            v.                  )    Case No. 2:21-cv-120
                                )
Vermont Bread Company,          )
Superior Bakery, Inc., Koffee   )
Kup Bakery, Inc., Koffee Kup    )
Distribution LLC, KK Bakery     )
Investment Company LLC, KK      )
Bakery Holding Acquisition      )
Company, and American           )
Industrial Acquisition          )
Corporation,                    )
                                )
        Defendants,             )
                                )
and                             )
                                )
Linda Joy Sullivan, in her      )
capacity as the Dissolution     )
Receiver for Koffee Kup         )
Bakery, Inc., Vermont Bread     )
Company, Inc. and Superior      )
Bakery, Inc.,                   )
                                )
        Intervenor-Defendant-   )
        Crossclaimant,          )
                                )
            v.                  )
                                )
KK Bakery Investment Company,   )
LLC, KK Bakery Holding          )
Acquisition Company, and        )
American Industrial             )
Acquisition Corporation,        )
                                )
        Crossclaim Defendants.  )

## OPINION AND ORDER

Pending before the Court is a motion for summary judgment and for entry of partial final judgment filed by Intervenor-Defendant-Crossclaimant Linda Joy Sullivan in her capacity as the Dissolution Receiver ("DR") for Koffee Kup Bakery, Inc., Vermont Bread Company, Inc., and Superior Bakery, Inc. (collectively the "Koffee Kup Entities").  ECF No. 255.  The Court previously granted summary judgment on liability in favor of Plaintiffs Matthew Chaney, Nadine Miller, Arthur Gustafson and the class they represent; ruled that the DR was entitled to indemnification by Defendants American Industrial Acquisition Corporation and Koffee Kup Bakery Investment Company, Inc. (collectively the "AIAC Defendants"); denied the AIAC Defendants' motion for summary judgment; and denied Plaintiffs' motion for summary judgment on damages.  The DR's pending motion asks the Court to determine damages and to enter partial final judgment against the AIAC Defendants.

For the reasons set forth below, the motion for summary judgment is granted in part and denied in part, and the motion for partial final judgment is denied.

## Factual Background

The underlying facts of this case were set forth in detail in the Court's Amended Opinion and Order of August 24, 2023, and the parties' familiarity with those facts is assumed.  Briefly

stated, this case centers on the closure of three bakeries and
the resulting layoff of over 300 workers.  Plaintiffs, on behalf
of themselves and a class of similarly-situated laid-off bakery
employees, claim that Defendants failed to provide notice of the
mass layoffs and/or closures as required by the Worker
Adjustment and Retraining Notification ("WARN") Act, 29 U.S.C.
§§ 2101-2109.  A WARN Act violation may subject an employer to
civil liability in the form of back pay and benefits for up to a
maximum of 60 days for each member of the class.  *See* 29 U.S.C.
§ 2104(a)(1).

     As noted above, the Court granted summary judgment to
Plaintiffs on their liability claims.  The Court also found the
AIAC Defendants and the Koffee Kup Entities to be jointly and
severally liable, and that the Koffee Kup Entities are entitled
to indemnification by the AIAC Defendants.

     In their motion for summary judgment, Plaintiffs sought an
award of damages in the amount of nearly $3.6 million.  The
Court's order summarized the facts underlying that figure:

     According to an affidavit submitted by class counsel,
     back pay was calculated based on employee census data
     as of May 7, 2021, which was provided to Plaintiffs by
     [Koffee Cup's Chief Financial Officer Mark] Coles in
     response to a subpoena.  ECF No. 203-51 at 4.  From
     that census data, class counsel developed a
     spreadsheet that included each employee's name, hire
     date, employment site, and annual salary.  ECF No.
     203-53.  The spreadsheet does not include the nine
     employees who opted out of the class action.  Using
     the annual salary figure for each employee, counsel

3

> then calculated the wages due for the 60-day period,
> with reductions for those who were employed for fewer
> than 120 days. *See* 29 U.S.C. § 2104(a)(1) (limiting
> WARN Act liability to no more than one-half the number
> of days the employee was employed).

ECF No. 238 at 38.

The DR objected to the back pay calculation as unsupported by admissible evidence and insufficiently individualized. The DR also objected to the use of national Department of Labor statistics for calculating insurance and retirement benefits. The AIAC Defendants argued for mitigation, asserting that they undertook significant efforts to try to help employees find new jobs and that most, if not all, were reemployed soon after the layoffs.

In addition to her objections to Plaintiffs' calculations, the DR asked the Court to apply the "good faith" exception set forth at 29 U.S.C. § 2104(a)(4). The WARN Act's "good faith" exception provides that if the employer "had reasonable grounds for believing that the act or omission was not a violation of this chapter the court may, in its discretion, reduce the amount of liability or penalty provided for in this section." *Id.* The DR argued that the Koffee Kup Entities were entitled to application of the exception because (1) they played no role in the decision to shut down the bakery facilities, and (2) WARN Act notices were provided almost immediately thereafter. ECF No. 208 at 12. The DR asserted her argument in the context of

4

Plaintiffs' request for damages, contending that the exception should reduce the Koffee Kup Entities' liability.  ECF No. 208 at 4, 8.

With respect to the "good faith" exception, the Court determined that "although resolution of the DR's crossclaim (for indemnification) may render the issue moot as a practical matter, questions of subjective and objective belief raised by the good faith defense are not sufficiently established to rule out disputed issues of fact."  ECF No. 238 at 41.  Based upon the various objections to Plaintiffs' submissions, including the possible application of the good faith exception, the Court denied their motion for summary judgment on damages.

The DR now submits her own motion for summary judgment on damages, which she calculates to be $2,759,502.02.  The calculation relies in part upon the spreadsheet provided by Plaintiffs in their summary judgment motion, particularly with respect to employee backpay.  The DR reports that while there were initial disagreements with Plaintiffs on several issues, those disagreements have been largely resolved and only one issue remains in dispute.[1]  That issue focuses on whether former

---

[1] The briefing discusses a second dispute pertaining to two individuals who were reportedly on leave.  The DR's reply memorandum explains that, in light of new evidence, she no longer opposes those employees' claims.  ECF No. 265 at 2.

employees who worked during the 60-day period after the shutdown, and were paid by the KeyBank Receiver, should have their claims reduced by the amounts of those payments.

The AIAC Defendants' objections to the DR's motion for a damages determination are more substantial.  They first object to the use of attorney affidavits to present evidence, claiming that such affidavits lack the necessary expertise to prove damages.  They also contend that the rules of professional conduct bar attorneys from testifying on contested issues.  The AIAC Defendants further argue that the DR's damages calculation fails to consider AIAC/KKBIC's "good faith and successful efforts to secure new employment for the laid off Koffee Kup Entities' employees."  ECF No. 262 at 6.

In addition to requesting a damages determination, the summary judgment motion asks the Court to enter partial final judgment against the AIAC Defendants on the Plaintiffs' claims and the DR's crossclaim.  The DR submits that the judgment would only be partial because the Court would still have before it her "good faith" defense, which could potentially reduce her liability.  Plaintiffs and the AIAC Defendants all oppose the DR's motion for partial final judgment, arguing that such a judgment would lead to piecemeal litigation and appeals on inseparable issues.  Plaintiffs urge the Court to issue final judgment against all Defendants.  ECF No. 263 at 8-11.

## Discussion

I.   **The DR's Motion for Summary Judgment**

   A.   **Summary Judgment Standard**

   Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (quoting *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). "A fact is material if it might affect the outcome of the suit under governing law." *Id.* The movant bears the burden of "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

   District courts may grant summary judgment as to damages for which there exist no disputed issues of material fact. *See AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 740 (2d Cir. 2010) ("[C]ourts ... routinely award damages that are readily calculable based on the undisputed facts on summary judgment.") (collecting cases).

   B.   **Sufficiency of the Evidence**

   The AIAC Defendants object to the damages evidence presented by the DR, arguing that the spreadsheets submitted by the DR's counsel cannot be adjudicated at summary judgment and

7

instead require a hearing.  The spreadsheets are based, in part, upon an employee census of May 7, 2021 produced by Koffee Kup Chief Financial Officer Mark Coles in response to a subpoena from Plaintiffs.  ECF Nos. 203-51 at 3, ¶ 6 (Declaration of Mary E. Olsen, Esq.); 257 at 2, ¶ 1 (Declaration of Peter D. Wolfson, Esq.).  The DR also reviewed the Koffee Kup Entities' records, including data from payroll company ADP.  ECF Nos. 257 at 2-3, ¶ 3; 257-2a, 257-2b, 257-2c (sealed).  To determine employees' medical benefits, the DR analyzed "trial balances" from the Koffee Kup Entities' books.  ECF No. 257 at 3, ¶ 4.  With respect to 401K benefits, the DR applied the Koffee Kup Entities' matching percentage (3%) to each participating employee's 60-day wage amount.  The DR then reconciled her findings with the spreadsheet submitted previously by Plaintiffs' counsel.  The DR's final calculation of damages is $2,759,502.02, a reduction of $832,047 from the figure proposed in Plaintiffs' summary judgment motion.

Courts in this Circuit have held that damages may be determined based on detailed affidavits or documentary evidence. *See Chun Jie Yin v. Kim*, No. 07 CV 1236, 2008 WL 906736, at *3 (E.D.N.Y. 2008) (collecting cases).  That general practice applies in WARN Act cases, with courts frequently accepting spreadsheets from counsel setting forth information based upon payroll and other records.  *See, e.g., 1199 SEIU United*

*Healthcare Workers E. v. S. Bronx Mental Health Council, Inc.*,
No. 13 CIV. 2768 JGK JCF, 2013 WL 6003731, at *4 (S.D.N.Y. Nov.
13, 2013), *report and recommendation adopted sub nom. 1199/SEIU
United Healthcare Workers E. v. S. Bronx Mental Health Council
Inc.*, No. 13 CIV. 2768 JGK, 2013 WL 6244716 (S.D.N.Y. Dec. 3,
2013) (assessing damages based upon spreadsheets with payroll
information); *Assif v. Titleserv, Inc.*, No. CV113203PKCAKT, 2015
WL 13753144, at *7 (E.D.N.Y. Aug. 14, 2015) (directing counsel
to submit a spreadsheet detailing the damages owed to WARN Act
class members); *see also Morris v. Moon Ridge Foods, LLC*, No.
18-CV-03219-SRB, 2020 WL 2461888, at *2 (W.D. Mo. May 12, 2020)
(holding that spreadsheet based on payroll records, accompanied
by counsel's explanation of calculation methods, was "sufficient
evidence" to show backpay and benefits damages under the WARN
Act); *Alfaro v. Gali Serv. Indus., Inc.*, No. TDC-18-3705, 2021
WL 4704690, at *5 (D. Md. Oct. 8, 2021), *report and
recommendation adopted*, No. CV TDC-18-3705, 2021 WL 8314951 (D.
Md. Oct. 27, 2021) (allowing evidence of unpaid wages, overtime,
and liquidated damages as set forth on spreadsheet with data
from plaintiffs' declarations, payroll information, and
interviews).  As one court recently explained, the burden of
proving the back pay and benefits an employee would have earned
during the WARN Act notice period "is easily accomplished when
the employer's payroll records are available...."  *Day v.*

*Celadon Trucking Servs., Inc*., No. 4:09CV00031 SWW, 2015 WL
12966204, at *2 (E.D. Ark. Feb. 4, 2015), *aff'd*, 827 F.3d 817
(8th Cir. 2016).  Accordingly, the Court finds that the
submissions by counsel, based upon business records and as
confirmed and agreed upon by Plaintiffs and the DR, are
sufficient evidence of WARN Act damages.

The AIAC Defendants next argue that an attorney may not
submit evidence on a matter that is contested.  The model code
of professional conduct allows attorneys to testify to matters
that are uncontested.  *See* Model Rule of Professional Conduct
3.7(a)(1).  The DR contends that the data in the spreadsheets
and other supporting materials are not contested, and that the
only contested questions are disputes of law.  Nothing in the
AIAC Defendants' briefing suggests otherwise, as they have not
challenged the accuracy of specific information presented to the
Court.

While the AIAC Defendants submit that they have asked
Plaintiffs for discovery related to damages, they have not
articulated why the evidence presented by the DR and Plaintiffs
is insufficient.  The payroll records, trial balances, and other
business records speak for themselves.  The methodologies for
calculating damages have been clearly explained and supported.
Inclusion of certain employees in those calculations, such as
those who were paid by the KeyBank receiver after the closures,

will be settled as a matter of law.  The Court therefore finds
that counsels' declarations do not violate their ethical
obligations.

The AIAC Defendants also argue that attorneys are not
qualified to offer evidence of damages, and that expert
testimony is instead required.  Insofar as the DR's submissions
might be called into question as beyond the expertise of an
attorney, her filings make clear that she prepared her
spreadsheet with assistance from a Certified Public Accountant.
*See* ECF No. 265-3 (Declaration of Herbert Maughan).  The
accountant has also confirmed, under oath, that DR counsel's
declaration in support of the summary judgment motion
"accurately sets forth the basis upon which the Spreadsheet was
prepared."  *Id.* at 3.  As the evidence underlying the parties'
damages arguments is both uncontested and adequately supported,
the Court will accept the evidentiary submissions from counsel.

### C.  **Mitigation**

Both the DR and the AIAC Defendants argue for mitigation of
damages.  The AIAC Defendants submit that they are entitled to
mitigation because of efforts made to secure new employment for
the laid off Koffee Kup Entities' employees.  When addressing
Plaintiffs' motion for summary judgment, the Court noted that
"Plaintiffs' damages do not appear to address or incorporate
those mitigative efforts, and the parties have not fully briefed

whether incorporation of such mitigation is appropriate under the WARN Act." ECF No. 238 at 39. The parties have now provided such additional briefing.

For support of their mitigation claim, the AIAC Defendants cite 29 U.S.C. § 2104(a)(4), which provides:

> If an employer which has violated this chapter proves to the satisfaction of the court that the act or omission that violated this chapter was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of this chapter the court may, in its discretion, reduce the amount of the liability or penalty provided for in this section.

29 U.S.C. § 2104(a)(4). The AIAC Defendants did not argue for application of this "good faith" exception in their previous summary judgment filings, and the Court rejected their argument that WARN Act exceptions spared them from liability.[2] They now contend that notwithstanding any WARN Act violations, the harm incurred was minimized by their efforts to find new jobs for the laid off bakery employees. ECF No. 262 at 6. They also submit that they acted in "good faith" because they "believed that advance notice to their employee was unnecessary, because they

---

[2]   The AIAC Defendants now submit that they are entitled to the good faith exception, in part, because of their belief that those exceptions applied. ECF No. 267 at 3-4. To date, AIAC has offered no record evidence to support that claim aside from a conclusory assertion at summary judgment that the exceptions applied. ECF No. 217-4 at 8, ¶ 20.

would all be re-employed shortly after the facilities shutdown."
ECF No. 267 at 3.

The "good faith" exception is narrowly construed, and as
plainly set forth in the statute, is limited to the employer's
good faith belief that its acts or omissions at the time of
closure did not violate the Act.  *See Reed v. Alecto Healthcare
Servs., LLC*, No. 5:19-CV-263, 2022 WL 4119367, at *16 (N.D.W.
Va. Aug. 2, 2022) ("[T]he WARN Act's good faith mitigation
provision has been interpreted narrowly to require proof that
the employer believed at the time of the plant closing that it
was giving 60 days' notice or that it fit within one of the
provisions allowing shortened or no notice.").  The "good faith"
exception, and any resulting mitigation, does not consider post-
closure facts such as whether employees were able to find other
employment during the 60-day violation period.  *See, e.g.,
Collins v. Gee W. Seattle LLC*, 631 F.3d 1001, 1007 (9th Cir.
2011) ("damages under the WARN Act are not offset by wages
earned from another employer during the statutory time period").

The AIAC Defendants rely upon *Headrick v. Rockwell
International Corporation*, 24 F.3d 1272 (10th Cir. 1994), which
held the employer was not liable to give WARN Act notice since
its former employees were immediately deemed employees of a new
manager and therefore suffered no "employment loss."  *Id.* at
1277, 1280.  *Headrick* is distinguishable, since in this case a

13

new employment group took control of the business, terminated employees, and did not re-hire them. *See Guippone v. BH S & B Holdings LLC*, 681 F. Supp. 2d 442, 451 (S.D.N.Y. 2010) (distinguishing *Headrick* and other cases as not involving "a purchaser [that] closed down the business it bought within the first six months of ownership").

The AIAC Defendants cite no case support for their contention that post-termination earnings by employees can mitigate WARN Act damages. In fact, several federal circuit courts have found no basis for such mitigation. *See Collins* 631 F.3d at 1007; *Long v. Dunlop Sports Group Americas, Inc.*, 506 F.3d 299, 201 (4th Cir. 2007) (holding that the employer's liability is reduced by "'any wages paid by the employer to the employee,' but not reduced by wages the employee may earn from a new employer"); *Saxion v. Titan-C-Mfg., Inc.*, 86 F.3d 553, 560 (6th Cir. 1996) (noting with approval the Fifth Circuit's conclusion that "the WARN Act contains no provision that would allow an employer to reduce its statutory liability by the amount of its employees' outside earnings"); *Carpenters Dist. Council of New Orleans & Vicinity v. Dillard Dep't Stores, Inc.*, 15 F.3d 1275, 1284 n.1 (5th Cir. 1994) ("The WARN Act, however, does not include a provision that would allow an employer to deduct wages earned by an employee from other sources."); *United Steelworkers of Am., AFL-CIO-CLC v. N. Star Steel Co.*, 5 F.3d

14

39, 43 (3d Cir. 1993) ("An employer who violates WARN is entitled to reduce its liability to its aggrieved employees only by payments within the categories set forth in Section 2104(a)(2) that *it* paid to the aggrieved employees."). Consequently, as one district court recently commented, "[t]his Court applauds defendants' efforts after the notice, but this Court will not allow defendants to receive a good faith exception and reduce the amount of liability or penalty owed to plaintiffs in this case." *Reed*, 2022 WL 4119367, at *16. Because post-termination earnings by employees do not mitigate damages under the "good faith" exception, the AIAC Defendants efforts to find new jobs for employees, or belief that such jobs would be secured, do not entitle them to mitigation under 29 U.S.C. § 2104(a)(4).

The final issue with respect to damages, raised by both the DR and the AIAC Defendants, is the question of payments to 15 former bakery employees by the KeyBank receiver during the 60-day violation period.[3]  There is no dispute that those payments,

---

[3]  Plaintiffs and the DR initially disagreed about whether two employees on medical leave at the time of the closure are entitled to payment.  Such workers remain employees if they have a "reasonable expectation of recall."  20 C.F.R. § 639.3(a).  Both employees have submitted sworn affidavits stating that they fully expected to be medically cleared and to return to work.  ECF No. 263-2.  In light of that evidence, the DR no longer objects to their inclusion in the damages calculation.  The Court is not persuaded by the AIAC Defendants' contention that more is required of these former employees.

totaling $215,112.08, were made with Koffee Kup Entities' funds. Defendants ask the Court to apply 29 U.S.C. § 2104(a)(2), which provides that an employer's liability "shall be reduced by — (A) any wages paid by the employer to the employee for the period of the violation; ... and (C) any payment by the employer to a third party or trustee ... on behalf of and attributable to the employee for the period of the violation."  29 U.S.C. § 2104(a)(2).

When the KeyBank receiver paid laid-off bakery employees for post-closure work, it reportedly did so using an "independent contractor" form.  It also issued 1099 tax forms rather than W-2 employee tax forms to reflect workers' pay. Plaintiffs argue that because those workers were independent contractors and were paid by the prior receiver rather than the employer itself, the payments were not "wages paid by the employer to the employee for the period of the violation."  *Id.*

The Defendants' position on this issue has several flaws. First, the KeyBank receiver was never the employer.  The receiver used Koffee Kup Entities' funds to pay people to preserve the company's assets, but did not retain them as employees.  *See Estrada v. Salyer Am.*, No. C 09-05618 JW, 2010 WL 11580074, at *3 (N.D. Cal. Mar. 31, 2010) ("A receiver merely holds the custody of the property involved in the litigation."); *see also Office and Prof'l Employees Int'l Union Local 2, AFL-*

16

*CIO v. FDIC*, 138 F.R.D. 325, 327 (D.D.C. 1991) (holding that the WARN Act did not apply to the FDIC in its capacity as receiver of a closed bank because the federal government is not an employer when it is taking over and shutting down a bank).  That they formally identified those workers as "independent contractors" and issued them 1099s, while not dispositive on this question, is indicative of the relationship.

Furthermore, the KeyBank receiver was not a "third party or trustee" as contemplated by the statute.  The statute itself uses a parenthetical to explain that a "payment by the employer to a third party trustee ... on behalf of and attributable to the employee" consists of, for example, "premiums for health benefits or payments to a defined contribution plan."  29 U.S.C. § 2104(a)(2)(C).  Those examples make sense, as such payments would indeed be made "on behalf of" employees, and not to them directly, in order to pay health insurance and/or retirements benefits in their names.  Nothing in the statute suggests that this provision applies to monies paid by third parties for work performed during the period of violation.

Finally, the Fifth Circuit has noted that "[w]here, as here, the employee is *terminated*, § 2104(a)(2) is inapplicable because by definition an employee who has been terminated cannot earn any wages *during* the violation period."  *Dillard Dep't Stores, Inc.*, 15 F.3d at 1283 n.14.  That reasoning is

17

consistent with Plaintiffs' contention that the workers were not paid wages, and that Section 2104(a)(2)(C) does not apply. Absent any binding authority to the contrary, the Court finds that the DR and the AIAC Defendants are not entitled to a reduction in liability on the basis of 29 U.S.C. § 2104(a)(2)(C).

## II.  The DR's Motion for Partial Final Judgment

The DR's summary judgment motion also asks the Court to enter a partial final judgment on behalf of the Plaintiffs against the AIAC Defendants, and on behalf of the DR on her crossclaim against the AIAC Defendants.  The remaining issue in the case would be the amount owed to Plaintiffs by the DR.  The DR submits that to determine that amount, the Court will need address whether her liability is reduced by the Koffee Kup Entities' "good faith" at the time of the plant closures.  That issue has not yet been resolved.

Entry of a partial final judgment is governed by Federal Rule of Civil Procedure 54(b).  In light of the "historic federal policy against piecemeal appeals," the Second Circuit has cautioned that "[a] certification under Rule 54(b) should be granted only if there are interest[s] of sound judicial administration and efficiency to be served, or, in the infrequent harsh case," where "there exists some danger of hardship or injustice through delay which would be alleviated by

18

immediate appeal." *Svenska AB v. Harris Corp*., 947 F.2d 627, 629 (2d Cir. 1991) (internal quotation marks and citations omitted).

"Rule 54(b) authorizes a district court to enter partial final judgment 'when three requirements have been satisfied: (1) there are multiple claims or parties, (2) at least one claim or the rights and liabilities of at least one party has been finally determined, and (3) the court makes an express[ ] determin[ation] that there is no just reason for delay.'" *Linde v. Arab Bank, PLC*, 882 F.3d 314, 322–23 (2d Cir. 2018) (alterations in original) (quoting *Acumen Re Mgmt. Corp. v. Gen. Sec. Nat'l Ins. Co*., 769 F.3d 135, 140 (2d Cir. 2014)).  In determining whether certification of a partial final judgment is appropriate, a court should "consider such factors as whether the claims under review are separable from the others remaining to be adjudicated and whether the nature of the claims already determined is such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals." *Novick v. AXA Network, LLC*, 642 F.3d 304, 311 (2d Cir. 2011).

Here, the facts underlying the claims against the AIAC Defendants and those against the DR are heavily intertwined. Specifically, both the AIAC Defendants and the Koffee Kup Entities were involved in the plant closures.  Separate appeals

19

would require two appellate panels to wade through the same
detailed record prior to resolving any legal questions at issue.
That consideration alone weighs heavily against entering a
partial final judgment.  *See id.*

The Court also finds no hardship or injustice in issuing a
single, final judgment.  As Plaintiffs themselves note in the
briefing, resolving the DR's "good faith" defense should not be
a complicated matter as it may be accomplished in a short bench
trial.  Plaintiffs also anticipate a lengthy collection process
against the AIAC Defendants, while the DR has funds set aside
to, at least partially, fund payment to Plaintiff class members.
Consequently, if Plaintiffs' assertion is correct, a partial
judgment against the AIAC Defendants alone would not accelerate
relief for the displaced workers.  Finally, a final judgment on
the DR's cross-claim would be premature, since the amount of
indemnification owed by the AIAC Defendants to the DR will
depend, in part, on the success or failure of the DR's "good
faith" defense.

For each of these reasons, the DR's motion for entry of a
partial final judgment is denied.

## Conclusion

For the reasons set forth above, the DR's motion for
summary judgment (ECF No. 255) is granted in part and denied in
part.  The DR's motion to file certain exhibits under seal (ECF

No. 258) is granted.  The AIAC Defendants' motion for leave to file to a sur-reply memorandum (ECF No. 266) is also granted. Damages due to Plaintiffs total $2,987,040.60.  The Court will schedule a bench trial to determine whether the DR is entitled to a reduction in liability on the basis of good faith.

DATED at Burlington, in the District of Vermont, this 17th day of May, 2024.

/s/ William K Sessions III
Hon. William K. Sessions III
U.S. District Court Judge